IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 19, 2005

## STATE OF TENNESSEE v. ANTHONY JAMES SHEARER

**Appeal from the Circuit Court for Obion County**
**No. 4-71     William B. Acree, Jr., Judge**

---

**No. W2004-01774-CCA-R3-CD  - Filed June 6, 2005**

---

An Obion County Circuit Court jury convicted the defendant, Anthony Shearer, of possession with intent to deliver one-half gram or more of cocaine, a Class B felony, and the trial court sentenced him to nine years in the Department of Correction. The defendant appeals, claiming that the evidence is insufficient and that his sentence is excessive. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ALAN E. GLENN, J., joined.

Joseph P. Atnip, District Public Defender (on appeal), William Anthony Helm, Bartlett, Tennessee (at trial), for the appellant, Anthony James Shearer.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Thomas A. Thomas, District Attorney General; James T. Cannon, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to the defendant's possessing 4.4 grams of crack cocaine. At the trial, Union City Police Officer Jeff Jackson testified that he, along with Union City Police Officers Shawn Palmer and Derrick Odell, served a search warrant at the defendant's apartment on November 7, 2003. Officer Jackson said that when Officer Palmer knocked on the door and announced "Police. Search warrant," they heard a woman say something followed by what they believed was someone running through the house. He said that at that time, Officer Palmer unlocked the door with a pass key. Officer Jackson said that when he entered the apartment, he saw the defendant's wife running into the bedroom. He said that when he got to the bedroom, he saw the defendant's wife stuffing something into a clothes basket. He said that he told Union City Assistant Police Chief Perry Barfield, who had arrived, and that Chief Barfield searched the basket and found crack cocaine. Officer Jackson said that after everyone was secured, he read the defendant and his wife their rights.

He said that the defendant claimed that "everything--all the drugs in the house were his." He said the defendant later admitted that the guns and scales found in the search were also his.

Chief Barfield testified that he and Union City Police Lieutenant Rick Kelly arrived at the scene as Officers Palmer, Jackson, and Odell were entering the apartment. Chief Barfield said that he searched the clothes basket and found a plastic bag that contained what he believed to be crack cocaine. He said that after the suspects had been given Miranda warnings, he heard Lieutenant Kelly and the defendant talking about the drug business slowing down and that the defendant commented "that it had slowed down." See Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).

On cross-examination, Chief Barfield admitted that citizens of a community may discuss the drug problem in general and that the defendant did not say his drug business had gone down, only that the drug business in general had gone down. However, Chief Barfield maintained that the question was directed toward the defendant and his business.

Officer Palmer testified that he found approximately $720 and two guns under the mattress in the same bedroom where the drugs were found. On cross-examination, he said that the amount of cash was significant because to his knowledge the defendant did not have a job. He said that in addition to the drugs, cash, and guns, they also seized electronic scales, utility knives with what appeared to be cocaine residue on them, and materials used for packaging narcotics. He said the Tennessee Bureau of Investigation crime laboratory determined that the substance was 4.4 grams of crack cocaine.

Lieutenant Kelly testified that he talked to the defendant after he had been read his rights. He said that during this conversation, the defendant said that the drug business had been slow for four or five years.

On cross-examination, Lieutenant Kelly admitted that although he asked the question in relation to the defendant's drug business, it was possible that the defendant could have believed they were talking about the drug business in Obion County in general. He also admitted that it was possible that a regular citizen could tell if the drug business was down through reading newspapers and word of mouth.

The defendant testified that he was employed by Superior Enterprise Incorporation as a welder for two years. He said the guns which the police found were his. He said the handguns were to protect his house after a series of break-ins, the muzzle-loader was for hunting, and the assault rifle was part of his hobby of gun and knife collecting. He said he was given his Miranda rights and talked with Lieutenant Kelly about the drug business. The defendant said he could tell the drug business was down because he had not heard much about it. He said he believed the question was directed at the drug business in general. He said he was a drug user not a dealer. He said that his sister gave him the money that the police found to make a payment on her car that he was driving at the time. He said he kept the money under the mattress because he did not have a bank account.

On cross examination, the defendant admitted that he knew the drugs were in the apartment and that he had been a user for eight months. He said the police did not find his crack pipe because it was hidden in the sink drain. He admitted that he did not have the pipe anymore. He also admitted paying $100 for the 4.4 grams of crack cocaine. He said somebody else got it for him because they could get a better deal.

The defendant testified that he got a deal on the drugs because somebody said they needed to recoup and because he let them store the scales and packaging materials in his truck. He said he bought the drugs through a person called "C." He admitted that he and "C" stored the package materials and scales for someone named Jeff from Memphis. He said Jeff is the person from whom "C" bought the drugs. He said he has not seen "C" or Jeff since then.

The defendant's wife testified that she had no knowledge of the drugs or scales found during the search. She said the $720 was for a car payment on her sister-in-law's car. She said they normally kept money under the mattress. On cross-examination, she admitted that she did not notice any shortage of money during the eight month period that the defendant testified he had been using cocaine.

In rebuttal, Officer Palmer testified that the street value of 4.4 grams of crack cocaine was close to $200 from a dealer. He said $100 through a second or third party (runner) would buy one-half gram of crack cocaine. He said that through a runner, 4.4 grams of crack cocaine would cost approximately $800. He said that they did not find any crack pipes in the defendant's apartment but that they did find cutting and packaging materials and weighing devices.

On cross-examination, Officer Palmer admitted that from a dealer, an "8-ball" or 3.5 grams of crack cocaine would cost $135-$180. He said that it was impossible for the defendant to purchase 4.4 grams of crack cocaine through a runner for $100 because a runner would keep some of the money or take some of the cocaine for himself.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence presented at trial is insufficient to support his conviction. He asserts that although the state proved he was in possession of 4.4 grams of cocaine, it failed to prove that he intended to deliver it. The state contends that the evidence is sufficient. We agree with the state.

Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence; rather, we presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). In Tennessee,

questions about witness credibility are resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

T.C.A. § 39-17-417 provides,

> (a) It is an offense for a defendant to knowingly:
>
> . . . .
>
> (4) Possess a controlled substance with intent to manufacture, deliver or sell such controlled substance.

T.C.A. § 39-17-419 provides, in relevant part,

> It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing.

In a light most favorable to the state, the record reflects that the defendant was in possession of 4.4 grams of cocaine with a street value of $800 and that the defendant was in possession of weighing scales, cutting materials, and packaging materials. We conclude that given the permissive inference, a rational juror could find beyond a reasonable doubt that the defendant possessed the cocaine with the intent to deliver it. The defendant is not entitled to relief on this issue.

## II. EXCESSIVE SENTENCE

The defendant next contends that his sentence is excessive. He argues that the trial court erred in failing to apply a mitigating factor to his sentence. The state contends that the trial court's failure to apply the mitigating factor was not error. In the alternative, the state argues that the defendant's sentence, only one year above the presumptive minimum, is justified based upon his six prior misdemeanor convictions.

At the sentencing hearing, counsel for the defendant argued that the trial court should apply as a factor in mitigation the fact that the defendant's conduct did not cause or threaten serious bodily injury. T.C.A. § 40-35-113(1). After listening to the arguments of counsel and considering the presentence report, the trial court enhanced the defendant's sentence from eight years, the presumptive minimum in the range, to nine years based upon its application of enhancement factor (2) regarding the defendant's prior criminal history of six misdemeanor convictions for possession of a weapon with the intent to go armed (twice), assault, reckless endangerment, resisting arrest, and driving on a suspended license. See T.C.A. § 40-35-114(2). The trial court refused to apply mitigating factor (1) stating, "I have never used that as a mitigating factor in a drug case."

Our review of sentencing is de novo on the record with a presumption of correctness below. T.C.A. § 40-35-401(d). After imposition of the sentence, the defendant carries the burden to show

that the sentence is improper.  Therefore, as long as the trial court followed the statutory sentencing scheme, made findings of fact in the record, and gave due consideration in weighing the factors and principles relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred.  State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In order for the presumption of correctness to attach, there must be an "affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."  State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).  In this regard, for purposes of meaningful appellate review,

> the trial court must place on the record its reasons for arriving at the final sentencing  decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence.

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994) (citation omitted).

When conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment.  T.C.A. §§ 40-35-102, -103, -210; see also Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

In Tennessee, the range of punishment for a Range I defendant convicted of a Class B felony is eight to twelve years.  T.C.A. § 40-35-112(a)(2).  The appropriate sentence for a Class B felony is presumptively the minimum sentence unless there are enhancement factors present.  T.C.A. § 40-35-210(c).  Procedurally, the trial court is to increase the sentence within the range based upon the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors.  T.C.A. § 40-35-210(d)-(e).  The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record.  T.C.A. § 40-35-210, Sentencing Commission Comments; Ashby, 823 S.W.2d at 169; Moss, 727 S.W.2d at 237.

Initially, we note that our supreme court has held a trial court cannot refuse to apply mitigating factor (1) based solely upon the fact that the offense involved crack cocaine.  State v. Ross, 49 S.W.3d 833, 848 (Tenn. 2002).  The court stated that a trial court must consider the defendant's conduct surrounding the commission of the offense.  Id.  We believe that mitigating factor (1) may apply in this case because the defendant was only in constructive possession when he was arrested and there is no proof in the record that he was attempting to sell or deliver the cocaine at that time.  However, we also note that the record reflects the defendant conducted his drug

business in the home where his two minor children lived.  In any event, we afford this factor little weight and conclude that the defendant's prior criminal history of six misdemeanor convictions more than justifies the trial court's one year enhancement of his sentence.

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE